UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

      Plaintiff,

  v.                                      Case No. 13-CR-192

MARIANO MEZA,
a/k/a MARIANO ALELANDRO MEZA-RODRIGUEZ,

      Defendant.

### GOVERNMENT'S CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS

The United States of America, by its attorneys, James L. Santelle, United States Attorney for the Eastern District of Wisconsin, and Gail J. Hoffman, Assistant United States Attorney, hereby respectfully request that the court deny the defendant's motions set forth below.

**Introduction**

On October 8, 2013, a grand jury sitting in the Eastern District of Wisconsin returned a one count indictment charging Meza as an illegal alien in possession of ammunition under Title 18, United States Code, § 922(g)(5). R.1. Meza was subsequently arraigned on this charge, and has since filed the following three motions challenging (1) whether the indictment fails to allege an element of the offense; (2) whether the prohibition against possession of firearms and ammunition by illegal aliens violates the Second Amendment; and, (3) whether the statement obtained from Meza by an immigration officer must be suppressed. R.12-14.

## Analysis

1. **Meza's motion to dismiss the indictment because it does not allege an essential element fails as the government does not need to prove that Meza knew of his prohibited status.**

The indictment in the instant case alleges that Meza is an alien in possession of ammunition in violation of Title 18, United States Code, Sections 922 (g)(5) and 924(a)(2). Meza alleges that the indictment fails to allege that "Meza knew he was an illegal alien," and it therefore must be dismissed. R. 12 at 3. Meza further alleges that Meza's knowledge of his illegal alien status is an essential element of the crime, and because the indictment did not specifically allege this, the indictment must be dismissed. To the contrary, Meza's knowledge of his alienage is not a necessary element of the offense to be alleged in the indictment, therefore this argument fails. Moreover, appellate courts have ruled on this specific issue and rejected Meza's contention.

First, the Seventh Circuit has set forth a standard for reviewing objections to the sufficiency of the indictment. In *United States v. Glecier*, 923 F.2d 496, 499 (7th Cir. 1991) the court indicated that "in reviewing the sufficiency of an indictment, a court should consider the challenged count as a whole and should refrain from reading it in a hyper-technical manner." *Glecier*, 923 F.2d at 499 (quoting *United States* v. *Gironda*, 758 F.2d 1202, 1209 (7th Cir. 1985)).

In addition, the indictment need not track the exact language of the statute if the indictment otherwise alleges each of the essential elements of the crime. *United States v. Weatherspoon*, 581 F.2d 595, 600 (7th Cir. 1978). Likewise, when reviewing whether an essential element has been excluded, courts will not demand that any particular word or phrase be used, and that an element may be alleged "in any form" which substantially states

it. *Weatherspoon*, 581 F.2d at 600. The specificity requirement of Fed. R. Crim. P.7(c)(1) that "the indictment or information shall be as plain and concise a definite written statement of the essential facts constituting the offense charged" is satisfied when the indictment meets the requirements of the Fifth and Sixth Amendments." *Glecier*, 923 F.2d at 499 n.2. An indictment is sufficient "if it states the elements of the crime charged, informs the defendant of the nature of the charge so that she may prepare a defense and enables the defendant to plead the judgment as a bar against future prosecutions for the same offense." *United States v. Agostino,* 132 F.3d 1183, 1189 (7th Cir. 1997).

In the case at hand, the Indictment reads as follows:

**THE GRAND JURY FURTHER CHARGES THAT:**

1. On or about August 24, 2013, in the State and Eastern District of Wisconsin,
**MARIANO A. MEZA,**
**a/k/a MARIANO ALEJANDRO MEZA-RODRIGUEZ,**

being an alien illegally and unlawfully in the United States, knowingly possessed ammunition which, prior to his possession of it, had been transported in interstate commerce, and the possession of which was therefore in and affecting commerce.

2. The ammunition is further described as one .22 caliber cartridge containing the markings "C" on the head-stamp.

All in violation of Title 18, United States Code, Sections 922(g)(5) and 924(a)(2).

Here, simply by comparing the statutory language of the statute to the language of the indictment, Meza has received sufficient notice of the charge.[1]

Moreover, the Seventh Circuit Pattern Jury Instructions for Title 18 United States Code Section 922(g)(5) sets forth the following elements to be established at trial:

---

[1] Title 18, United States Code, Section 922(g)(5) reads in pertinent part that it shall be unlawful for any person who, being an alien illegally or unlawfully in the United States, to possess any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

3

To sustain a charge of being an alien in possession of ammunition pursuant to 18 United States Code Section 922(g)(5), the government must prove the following propositions:

> <u>First</u>, the defendant knowingly possessed a firearm or ammunition; and
>
> <u>Second</u>, at the time of the charged act, the defendant was a prohibited person; and
>
> <u>Third</u>, the firearm or ammunition had been shipped or transported in interstate or foreign commerce.

*7th Cir. Pattern Crim. Jury Instructions, 2012.*

As clearly stated, the Seventh Circuit Pattern Jury Instructions for this offense do not include the defendant's knowledge of his prohibited status as an element of the offense. Thus, Meza's position finds no support in this circuit's analysis of Section 922(g)(5).

Moreover, in a case right on point, *United Sates v. Montero-Camargo,* 177 F.3d 1113, 1120 (9th Cir. 1999), *opinion withdrawn*, 192 F.3d 946, *reinstated by en banc opinion*, 208 F.3d 1122, 1127 n.8 (2000), the Ninth Circuit rejected the defendant's contention that the district court erred in refusing to instruct the jury that knowledge of his status as an illegal alien was an element of the ammunition possession charge. In so find, the court stated the defendant "need not have known that he was in the United States illegally to 'knowingly violate' 18, U.S.C. § 922(g)(5) as knowledge pertains only to the item possessed not to the status of the possessor." *Id.* at 1120.

Other Circuits have also found that the government need not prove the defendant's knowledge of his status. *United States v. Langley*, 62 F.3d 602, 604-06 (4th Cir. 1995) (en banc) (government need not prove knowledge of felon status nor of interstate commerce nexus);

*United States v. Ballentine*, 4 F.3d 504, 506 (7th Cir. 1993) (proof of defendant's knowledge of status as a fugitive unnecessary; government need only show defendant's knowledge that charges were pending); *United States v. Dancy*, 861 F.2d 77, 81-82 (5th Cir. 1988) (collecting cases) (construing legislative history of § 924(a)(1)(B) not to impose requirement of proving defendant's knowledge of status of felon); *United States v. Hutzell*, 217 F.3d 966, 967-68 (8th Cir. 2000) (government not required to prove knowledge of status under § 922(g)(9); *United States v. Butler,* 637 F.3d 519, 532 (5th Cir. 2011); (in § 922(g)(6) prosecution the *mens rea* requirement only applies to the act of firearm possession, not prohibited status).[2]

Indeed the Seventh Circuit recently analyzed the language of Section 922(g) in the context of a challenge to Section 922(g)(9), the subsection prohibiting the possession of firearms or ammunition by those convicted of misdemeanor crimes of domestic violence. In *United States v. Stein*, 712 F.3d 1038, 1040-1041 (7th Cir. 2013) the court stated that "ultimately, as a matter of statutory construction, there is no reason to think Congress intended 'knowingly' to mean different things for different subsections of section 922(g)." *Id.* at 1041. The referenced *Butler,* a 922(g)(6) prosecution where the government did not need to prove the defendant knew of his prohibited status, and noted that it would be illogical to impose a different *mens rea* requirement on different subsections of Section 922(g). Thus, based upon the Seventh Circuit Pattern Jury Instructions in addition to case law, the government need not allege in the indictment nor prove at trial that Meza knew of his alien status. Accordingly, Meza's motion fails.

---

[2] *Butler* also rejects Meza's arguments under *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994) and *United States v. Flores-Figueroa.* 556 U.S. 646 (2009).

## 2. Title 18, United States Code, Section 922(g)(5) neither violates the Second Amendment nor is subject to strict scrutiny.

In his second motion, Meza alleges that Title 18, United States Code, Section 922(g)(5), the statute which prohibits illegal aliens from possessing ammunition and firearms, violates the Second Amendment to the United States Constitution, and that strict scrutiny should be applied in this review. Meza is wrong, and this argument has been rejected by other appeal courts that have addressed this issue.

The Second Amendment to the United States Constitution allows for the "right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller,* 554 U.S. 570, 635 (2008). When describing himself as among "the people," Meza presents himself as a stable part of the community with "family, school and work," and sets out his school and family ties. R. 13 at 8.

Yet, the circumstances of the instant case, and Meza, fall far afield from the circumstances covered by the Second Amendment, and contemplated by *Heller.* Contrary to this depiction of Meza, according to the Wisconsin Circuit Court Access, a public record, on September 25, 2013, in case number 2013FA006160, a domestic abuse restraining order was granted against Meza, including a firearm restriction, and Meza is "to refrain from committing acts or threats of domestic abuse against the petitioner." In addition, on September 22, 2008, in case number 2008CM003450, Meza plead guilty to resisting or obstructing an officer. Currently in case numbers 2013CM000394 and 2013CM003863, respectively, additional charges of resisting/obstructing an officer are pending against Meza from February and August of 2013. Moreover, during his arrests Meza provided varied

answers when asked about his place of birth, and the social security number Meza provided did not correspond to him. Tr. 35. In short, Meza is present in the United States illegally, and these circumstances do not fall under the protection of *Heller.*

Furthermore, In *Heller*, the United States Supreme Court held that the Second Amendment guarantees an individual the right to possess and carry weapons. *Id*. Unlike the instant case, the individual in *Heller* seeking the right to the privileges conferred by the Second Amendment was a United States citizen. Thus, the issue of whether an alien has a right to bear arms was not presented to the Supreme Court. Regardless, *Heller* does not support Meza's claim that an illegal alien constitutes "the people" as referenced in the Second Amendment.

The Court in *Heller* found that the Second Amendment "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id*. In this same vein, the Supreme Court stated that "in all six other provisions of the Constitution that mention 'the people,' the term unambiguously refers to all members of the political community. The Court continued, "[w]e start therefore with a strong presumption that the Second Amendment right is exercised individually and belongs to all *Americans*." *Id*. at 580-581. (*Emphasis added*).

Indeed, as the Fifth Circuit in *United States v. Portillo-Munoz*, 643 F.3d 437 (5th Cir. 2011) interpreted *Heller,* the protections contained in the Second Amendment do not extend to aliens illegally present in the United States, and do not guarantee any right to illegal aliens to possess firearms. In *Portillo-Munoz*, the defendant, a Mexican citizen illegally present in the United States, possessed a firearm in order to protect chickens from coyotes at a ranch where

7

he worked. The defendant entered a conditional guilty plea and alleged that his conviction as an illegal alien in possession of a firearm violated the Second Amendment, and the Fifth Amendment's Due Process Clause.

The Fifth Circuit found that "illegal aliens are not 'law-abiding, responsible citizens' or 'members of the political community,' and aliens who enter or remain in this country illegally and without authorization are not Americans as that word is commonly understood." *Id*. at 440. The Fifth Circuit also found that the Court's language in *Heller* did not lend support to the defendant's argument. Likewise, the Fourth, and Eighth Circuits have also found that the Second Amendment does not cover illegal aliens, and the Tenth Circuit upheld Section 922(g)(5) because it survives intermediate scrutiny. *See United States v. Carpio-Leon,* 701 F.3d 974 (4th Cir. 2012); *United States v. Flores,* 663 F.3d 1022 (8th Cir. 2011); and, *United States v. Huitron-Guizar,* 678 f.3D 1164 (10th Cir. 2012).

Like Meza, and to no avail, the defendant in *Portillo-Munoz* relied on *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990). In a decision prior to *Heller*, the Supreme Court in *Verdugo-Urquidez* found that some defendants have Fourth Amendment rights in certain circumstances, but this is not a case where a defendant present in the United States illegally was held to be part of "the people" under the Constitution. *Portillo-Munoz*, 643 F.3d at 440. Therefore, despite Meza's children he fathered here, the presence of his mother, and school attendance (R.13 at 8), the fact remains that Meza was present illegally in the United States

and as an illegal alien does not fall under "the people" as referenced in the Second Amendment.[3]

In addition, when Congress passed Title 18 United States Code Section 922(g)(5), Congress only limited the ban against firearms to aliens who are "illegally or unlawfully in the United States," and has made this illegal and unlawful status an element of the offense that the government that the government must prove beyond a reasonable doubt. In essence, like a felon in possession of a firearm, the statute prohibits the possession of firearms by persons who are here illegally and is thus intended to address illegal conduct.

Meza also argues that unlike cases which uphold other classes of prohibitions, there is nothing inherently dangerous about a person in this country illegally. *See United States v. Skoien*, 614 F.3d 639 (7th Cir. 2010)(en banc)(defendant convicted of domestic abuse); *United States v. Williams*, 616 F.3d 685 (7th Cir. 2010)(defendant a convicted felon); and, *United States v. Yancey*, 621 F.3d 681, 683 (7th Cir. 2010)(defendant an unlawful user of a controlled substance). To the contrary, the same can be said about non-violent felons who are also prohibited from possessing firearms. *See Yancey*, 631 F.3d at 685. Like Section 922(g)(3), the unlawful user of a controlled substance prohibition, Section 922 (g)(5) does not require a prior conviction or a finding of dangerousness. In addition, like Section 922(g)(3), Section 922(g)(5) seeks to prevent firearm possession by people who are engaged in illegal behavior such as Meza who is illegally present in the United States.

---

[3] As noted by Meza, district courts have also found that the Second Amendment does not apply to illegal aliens. See *United States v. Lewis*, 2010 WL 337 0754, at *3 (N.D. Ga. May 26, 2010); *United States v. Yanez-Vasquez*, 2010 WL 411112, at *2 (D. Kan. Jan 28, 2010).

Meza further argues that strict scrutiny governs the review of all Second Amendment claims. But that test does not apply here. While the Supreme Court declined to articulate a standard of review in *Heller*, its conclusion that specific firearm regulations were "presumptively lawful" under the Second Amendment displays a degree of deference to Congress that is inconsistent with strict scrutiny review. *See Heller*, 554 U.S. at 688 (Breyer, J., dissenting) (noting that "the majority implicitly, and appropriately, rejects [a "strict scrutiny" test] by broadly approving a set of laws . . . whose constitutionality under a strict scrutiny standard would be far from clear.") Moreover, a number of circuit courts, including the Seventh Circuit, have applied intermediate scrutiny when reviewing firearms laws. *See United States v. Chester*, 628 F.3d 73, 682-83 (4th Cir. 2010) (applying intermediate scrutiny to review of §922(g)(9)); *United States v. Reese*, 627 F.3d 792, 801-02 (10th Cir. 2010) (applying intermediate scrutiny to review of the disarmament of those subject to domestic violence restraining orders, under §922(g)(8)); *Williams*, 616 F.3d, 685, 692-94 (7th Cir. 2010) (applying intermediate scrutiny as-applied challenge to felon disarmament under §922(g)(1); and *Skoien*, 614 F.3d 638, 541-42 (7th Cir. 2010) (declining to specifically endorse a level of scrutiny, but upholding 18 U.S.C. §922(g)(9), which prohibits those convicted of "misdemeanor crimes of domestic violence," because "[b]oth logic and data establish a substantial relation between §922(g)(9)" and the "important governmental objective" of "preventing armed mayhem"). Accordingly, to the extent that Section 922(g)(5) is not a presumptively lawful regulatory measure, this court should apply an "intermediate scrutiny" standard of review.

Intermediate scrutiny generally requires some showing that the challenged law is "substantially related to an important government objective." *See, e.g., Clark v. Jeter*, 486 U.S.

456, 461 (1988). But there is reason to believe that an even greater degree of deference should be given to Congress in immigration-related matters. Quite simply, Congress's power over immigration-related matters is not merely "broad," but "over no conceivable subject is the legislative power of Congress more complete." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977). As "a fundamental sovereign attribute" (*Id.*), "the responsibility for regulating the relationship between the United States and our alien visitors" – determinations about which aliens should be allowed to enter and remain in the United States and the terms and conditions imposed upon such aliens while they are here – is "committed to the political branches" of government. *Matthews v. Diaz*, 426 U.S. 67, 81 (1976). And, because Congress's "power over aliens is of a political character," its exercise of that power is "subject only to narrow judicial review." *Hampton v. Mow Sun Wong*, 426 U.S. 88, 101 n.21 (1976); *see also Shaughnessy v. Mezei*, 345 U.S. 206, 210 (1953) (holding that congressional power over aliens is "largely immune from judicial control").

The Supreme Court has thus recognized Congress's authority to limit the rights of illegal aliens in ways that would not be constitutionally permissible for citizens or permanent residents. In *Fiallo*, the Court explained that "in the exercise of its broad power over immigration and naturalization, 'Congress regularly makes rules that would be acceptable if applied to citizens." *Fiallo*, 430 U.S. at 792 (quoting *Matthews*, 426 U.S. at 80). *See also Demore v. Kim*, 538 U.S. 510, 522 (2003) (noting that, since *Matthews*, "this Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens"). Congress's power includes even "the authority to detain aliens suspected of entering the country illegally pending their deportation hearings

(*Reno v. Flores*, 507 U.S. 292, 305 (1993)), and to do so on a mandatory basis (*Kim*, 538 U.S. at 526-531). Clearly, as Congress has the authority to detain all aliens suspected of being in this country illegally, it also has the authority to limit illegal aliens' ability to possess a firearm.

Moreover, Congress's decision to disarm illegal immigrants is "substantially related to an important government objective," and would survive intermediate scrutiny even if Congress did not have particularly broad discretion in regulating immigration.

Along this line, Meza argues that illegal aliens are "not a cause of armed mayhem, nor is criminalizing their possession of a firearm a step toward preventing armed mayhem." R.13. at 14. Yet a report on sentencing statistics from the United States Sentencing Commission establishes that 47% of all federal offenses were committed by non-citizens. U.S. Sentencing Commission Preliminary Quarterly Data Report, at 47 (tbl. 26), available at http://www.ussc.gov/Data_and_Statistics/Federal_Sentencing_Statistics/Quarterly_Sentencing_Updates/USSC_2010_Quarter_Report_4th.pdf. Additionally, non-citizens were responsible for 42.1% of all kidnappings and hostage taking, 30.7% of all drug trafficking, 42.6% of all drug possession, and 50% of all national-defense offenses. *Id.*

Thus, Meza's motion for the court to find Title 18, United States Code, Section 922(g)(5) unconstitutional under the Second Amendment must fail.

**3.     The officer's questioning of Meza was not an interrogation and therefore need not be suppressed.**

The United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) ruled that in order protect the right against self-incrimination, law enforcement authorities must advise an individual of certain rights prior to a custodial interrogation. Statements provided

without these warnings may not be used in the government's case-in-chief. *Id.*

In order to trigger *Miranda*, an individual must be both in "custody" and subject to "interrogation." *United States v. Yusuff*, 96 F.3d 982, 987 (7th Cir. 1996). In the instant case, the government does not dispute that Meza was in custody on August 27, 2013, when Customs and Immigration Officer Cassandra Shearing interviewed him. At issue is the second inquiry, whether that questioning by Officer Shearing amounted to an "interrogation." The *Miranda* Court defined custodial interrogation as "'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" U*nited States v. Westbrook*, 125 F.3d 996, 1002 (7th Cir. 1997)(quoting *Miranda*, 384 U.S. at 444).

Subsequently, the Court elaborated on "interrogation" and stated that it includes any words or actions on the part of law enforcement other than those normally part of arrest and custody, that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Pennsylvania v. Muniz*, 496 U.S. 291, 300-301 (1990). The benchmark is "whether a reasonable objective observer would have believed that the law enforcement officer's statements to the defendant were reasonably likely to elicit an incriminating response." *United States v. Hendrix*, 509 F.3d 362, 374 (7th Cir. 2007). Yet "not all statements obtained after a person is in custody are considered the product of interrogation." *United States v. Ambrose*, 668 F.3d 943, 955 (7th Cir. 2012)( quoting *United States v. Swanson*, 635 F.3d 995, 1001-02 (7th Cir. 2011)). The government asserts that questioning of Meza by Officer Shearing did not amount to an "interrogation."

In *United States v. Lopez-Garcia*, 565 F.3d 1306, 1317 (11th Cir. 2009) the Eleventh Circuit ruled that Miranda warnings were not required, finding no functional equivalent of interrogation, when an officer assigned to the jail's Immigration and Customs Enforcement unit asked the defendant in custody for a drug related charge about his immigration status because the officer did not know that the defendant would confess to illegal reentry. The court found that the officer should not have known that the defendant was reasonably likely to make self-incriminating statements during the interview although the officer was aware prior to the interview that the defendant was not born in the United States.

Similarly, in the instant case the purpose of Officer Shearing's interview was to access Meza's status from an administrative perspective related to deportation proceedings – not to illicit incriminating information. Tr. 5-6. Prior to the interview, Officer Shearing had neither read any of the police reports prepared regarding his arrest nor was she aware that Meza was in possession of a bullet. Tr. 22. Officer Shearing was alone in the interview room with Meza, he was not handcuffed, and the interview lasted approximately twenty minutes. Tr. 23-24. When asked if he had any questions, Meza wanted to know the purpose of the interview, and Officer Shearing told him that it was for immigration matters. Tr. 8, 22. Officer Shearing had no information to suggest that Meza had reentered the United States after deportation; only that he may have been in the country illegally. Tr. 26.

Had she learned from Meza that he reentered the United States after deportation, Officer Shearing would have stopped the interview. *Id.* Prior to the interview, Officer Shearing checked "all the systems," and found that Meza had no contact with Immigration. Tr. 27. At no point did Meza request that Officer Shearing refrain from asking him
14

biographical questions, and approximately one month later Officer Shearing learned that Meza would be prosecuted in federal court. Tr. 9. Accordingly, the instant circumstances are in keeping with *Lopez-Garcia*, and because Meza was not "interrogated" as contemplated by *Miranda* and its progeny, Meza's statement given to Officer Shearing was lawfully obtained, and thus admissible in the government's case-in-chief.

## Conclusion

Therefore, for the forgoing reasons, the government respectfully requests that the defendant's motions be denied.

Respectfully submitted this 3rd day of February, 2014.

>JAMES L. SANTELLE
>United States Attorney
>
>By:
>
>s/Gail J. Hoffman
>Assistant United States Attorney
>Gail J. Hoffman Bar Number: 1007361
>Office of the United States Attorney
>Eastern District of Wisconsin
>517 East Wisconsin Avenue, Room 530
>Milwaukee, Wisconsin    53202
>Telephone: (414) 297-1700; Fax: (414) 297-1738
>E-Mail: gail.hoffman@usdoj.gov