

U.S. Department of Justice

*United States Attorney*
*Eastern District of Wisconsin*

*Federal Courthouse*            *(414)297-1700*
*517 E. Wisconsin Ave, Rm 530*      *Fax (414) 297-1738*
*Milwaukee WI 53202*           *www.justice.gov/usao/wie*

February 10, 2014

The Honorable Judge William E. Callahan, Jr.
United States Magistrate Judge
Room 250, 517 East Wisconsin Avenue
Milwaukee, WI 53202

     RE:    *United States v. Meza*, Case No. 13-CR-192

Dear Judge Callahan:

     This letter brief serves as the government's reply to the defendant's brief submitted in support of its motion to suppress Meza's statement to Officer Shearing. In sum, the government asserts that the instant case is distinguishable from the authorities cited by Meza and he was not "interrogated" as contemplated by *Miranda*.

     First, Meza cites to *United States v. Mata-Abundiz*, 717 F.2d 1277, 1278 (9th Cir. 1983) in support of its contention that "*Miranda* warnings are required where an ICE agent is inquiring as to citizenship and status in the United States." R.24 at 11. Contrary to the instant case, the defendant in *Mata-Abundiz* was in custody on alien in possession of firearm charges. The immigration agent's questions of the incarcerated defendant about citizenship required *Miranda* warnings because the INS investigator knew that "evidence of alienage, coupled with the evidence of firearms possession, could lead to federal prosecution…He had reason to know that any admission of alienage by [the defendant] would be highly incriminating." *Mata-Abundiz*, 717 F.2d at 1279. In other words, the questions asked by the immigration agent related directly to an element of the crime that the INS agent suspected. *Id*. at 1280. The court continued:

> This does not mean that admissions obtained in civil investigation of in-custody suspects can never be used in criminal prosecutions, unless the investigator first gives warnings. The question here, as in other contexts, turns on whether there was 'interrogation' within the meaning of *Miranda*. If an INS investigator has no reason to suspect that the question asked is likely to elicit an incriminating response, there is no interrogation, and

therefore, no *Miranda* violation. Not all civil questioning constitutes interrogation…the investigator cannot control the constitutional question by placing a 'civil' label on the investigation.

*Id*.at 1279-1280.

Unlike *Mata-Abundiz*, Meza was neither in custody on charges related to his immigration status nor was he asked about the reason for his incarceration. Officer Shearing was solely questioning Meza about his immigration status. Tr. 5. To set the stage, when questioning Meza, Officer Shearing was not wearing a uniform; identified herself as an immigration officer; and, first asked whether Meza had any questions of her to which Meza replied no. Tr. 7.

Officer Shearing interviewed Meza no longer than twenty minutes, obtained biographical information from him; and, never questioned him about the basis for his incarceration. Tr. 8. Moreover, prior to the interview of Meza, Officer Shearing had neither read any of the police reports prepared regarding Meza's arrest nor was she aware that a bullet had been found during the investigation. Tr. 22. Therefore, Officer Shearing had no reason to suspect that her questions regarding alienage would elicit an incriminating response.

The instant case is similar to *United States v. Lugo*, 289 F.Supp.2d 790 (S.D. Texas 2003) where the defendant was incarcerated for unrelated state offenses and questioning by agents of the Border Patrol Criminal Alien Program (hereinafter "BORCAP") in jail did not rise to the level of "interrogation" within the meaning of *Miranda*. Specifically, the court stated that when an alien is in custody for an unrelated state law offense the questioning by BORCAP of all inmates which concerned "only basic biographical information regarding inmates' names, date of birth, citizenship and alien status," did not constitute 'interrogation,' where BORCAP agents were merely fact finders who had no discretion upon whether any particular inmate would be prosecuted or subjected to administrative proceedings.

In so finding, the court in *Lugo* took note of another Ninth Circuit case, *United States v. Salgado,* 292 F.3d 1169 (9th Cir. 2002). In *Salgado,* the defendant was in custody on a state charge unrelated to his immigration status when he was questioned by an immigration officer about his alienage. The INS officer did not *Mirandize* the defendant, and based upon his answers the officer placed a detainer on him. This allowed the defendant to be transferred to INS custody once the defendant completed his state sentence.

Salgado was deported, and he eventually returned to the United States where he was prosecuted for immigration violations. Salgado sought to suppress the statement

made to the INS officer which caused him to be deported in the first place. *Lugo,* 289 F.Supp.2d 798. Citing *Salgado,* the district court in *Lugo* stated:

> *If* Salgado had been interviewed in connection with a prosecution for violating the immigration laws, or *if* Salgado had been in custody on charges relating to his immigration status, *then* questions about birthplace and citizenship might have been reasonably likely to elicit an incriminating response in which case he should have been *Mirandized* before-hand. We so held in *Mata-Abundiz.* But that is not this case. *Id.*

Nor is it this one. While incarcerated on unrelated state charges, Meza was asked the same biographical questions referenced above, and after the interview, Officer Shearing placed a detainer on Meza. Tr. 21.

While Meza argues that he could be charged with a violation of Title 8, United States Code, Section 1325, entry without inspection, it is the Immigration Office's policy not to prosecute that offense. Over the 1,000 immigration interviews that Officer Shearing has conducted zero have resulted in a criminal prosecution. Tr. 24-25. Had Officer Shearing received information or believed that Meza had re-entered the country after deportation, then she would have *Mirandized* him. Tr. 26-27.

Therefore, given the above and its previous filing, the government respectfully requests that this Court deny Meza's motion to suppress his statement to Officer Shearing.

Respectfully submitted this 10th day of February, 2014.

            JAMES L. SANTELLE
            United States Attorney
     By:

            s/GAIL J. HOFFMAN
            Assistant United States Attorney
            Gail J. Hoffman Bar Number: 1007361
            Attorney for Plaintiff
            Office of the United States Attorney
            Eastern District of Wisconsin
            517 East Wisconsin Avenue, Room 530
            Milwaukee, Wisconsin 53202
            Telephone: (414) 297-1761; Fax: (414) 297-1738
            E-Mail: gail.hoffman@usdoj.gov