UNITED STATES OF AMERICA,

    Plaintiff,

  v.                                                    Case No. 13CR192

MARIANO A. MEZA,

    Defendant.

**CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTIONS TO DISMISS AND MOTION TO SUPPRESS**

Mariano Meza, through counsel, submits this consolidated reply brief in support of his motion to dismiss the indictment for failure to allege an element of the offense (Dkt. 12), his motion to dismiss the indictment on Second Amendment grounds (Dkt. 13), and his motion to suppress evidence (Dkts. 14, 24).

**I.    The indictment must be dismissed because it fails to allege the elements of § 922(g)(5) and the facts satisfying those elements.**

In opposition to Meza's motion to dismiss, the government argues that it is not required to prove Meza's knowledge of his prohibited status. In other words, the government does not need to establish that Meza knew he qualified as an "alien unlawfully or illegally in the United States." And the government does not need to prove that he had knowledge that it is a crime to possess ammunition with that

status. Meza agrees. After all, ignorance of the law is no defense. *Cheek v. United States,* 498 U.S. 192, 199 (1991).

Meza's argument is that the government must allege, and ultimately prove at trial, that he had knowledge of the facts constituting a violation of § 922(g)(5). This includes the facts giving rise to his unlawful or illegal status. Meza is not proposing this Court adopt a new interpretation of the *mens rea* requirement. It is the government's burden to prove that Meza knew of the facfts that constitute the offense. The Seventh Circuit has said that this understanding extends to all subsections of 18 U.S.C. § 922 that require a "knowing" violation, including those in § 922(g). *United States v. Stein,* 712 F.3d 1038, 1041 (7th Cir. 2013); *United States v. Carlton Wilson*, 159 F.3d 280, 289 (7th Cir. 1998). The government cites the Pattern Jury Instructions in support of its position, (Dkt. 23 at 4), but jury instructions do not replace the statutory text or supersede the caselaw interpreting it.

In *United States v. Carleton Wilson,* the Seventh Circuit addressed knowledge in the context of a § 922(g)(8) prosecution. 159 F.3d at 289. In that case, Wilson argued that he had no notice of § 922(g)(8)'s prohibition and was therefore unable to form the requisite *mens rea* to violate the statute. In rejecting Wilson's argument, the Court reiterated the common understanding that knowledge in this context applies to the facts constituting the offense. *Id.* The Court took care to note that the defendant did not argue that he lacked "knowledge of the actions constituting the offense (i.e., that

2

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

Case 2:13-cr-00192-RTR   Filed 02/10/14   Page 2 of 10   Document 26

he was possessing a gun in his car and was subject to an order of protection)." *Id*. By contrast, "Wilson's lack of knowledge of the existence of the statute" was "immaterial." *Id.*

*United States v. Stein,* cited by the government, relies on the same understanding of the requisite *mens rea.* 712 F.3d 1038 (7th Cir. 2013). In *Stein,* the Court affirmed the district court's ruling that evidence concerning Stein's "knowledge of his legal status" — that he was prohibited from possessing a firearm — was irrelevant. *Id.* at 1039. Stein wanted to argue that he was ignorant of his prohibited status because he had been told that his prior battery conviction would not impact his ability to possess a firearm. *Id.* at 1039-1040. Importantly, the evidence in the case established Stein knew of his prior conviction. *Id.* The Court insisted that the distinction is essential: the term "knowingly" requires proof of knowledge of the facts, not knowledge of his prohibited status. *Id.* at 1041.

Admittedly, this is a low burden and is easily established in most cases by proof of adjudicative procedures. In *Stein,* the defendant knew that he'd been convicted of battery against his live-in girlfriend, in *United States v. Ballentine,* 4 F.3d 504, 506 (7th Cir. 1993), the defendant knew that he had charges pending against him and that he had left the jurisdiction, and in *Carlton Wilson,* the defendant knew he was subject to a protective order. These cases confirm that the Seventh Circuit

interprets 18 U.S.C. § 924(a)(2)'s knowledge requirement as extending not only to the fact of possession, but to the facts establishing the prohibition.

Though its not the law, Judge Posner's dissent in *Carleton Wilson* reveals the force of the panel's opinion.159 F.3d at 295 (Posner, J., dissenting). The dissent takes issue with the panel's limited interpretation of the *mens rea* element, arguing that the government must prove the defendant knew his legal status in addition to the facts giving rise to it. The problem, from the dissent's point of view, is not that the panel opinion disposes with any *mens rea* element; rather, the problem is the narrow reading of the element. Put differently, the panel opinion insists upon the imposition of a *mens rea* element; the dissent agrees but concludes the imposition should extend more broadly.

Again, Meza is not arguing that the government must allege and prove he knew that his immigration status prohibited him from possessing a firearm or ammunition. But it must allege and prove knowledge of the facts of the offense, including the facts underlying his immigration status. The indictment in this case fails to allege that Meza possessed the requisite *mens rea* as to the facts establishing his prohibited status. Because this required element was omitted, the indictment must be dismissed.

## II. Meza has a Second Amendment right to bear arms and § 922(g)(5) unconstitutionally infringes upon that right.

Meza raises both a facial and an as-applied constitutional challenge to § 922(g)(5). The government argues, in response, that Meza is not entitled to Second Amendment protection because he has engaged in criminal behavior and he is present in the United States illegally. It further argues that § 922(g)(5) should be treated as a presumptively lawful regulatory measure. If not, according to the government, intermediate scrutiny should be applied, but with additional deference to Congress because the statute is related to immigration. Dkt. 23 at 11. Finally, it is the government's position that § 922(g)(5) survives intermediate scrutiny even without this additional deference. *Id.* at 12. Because Meza addressed most of these arguments in his motion, his reply will be brief.

First, it is Meza's position that illegal immigrants are among "the people" protected under the Second Amendment and that he qualifies for Second Amendment protection because he has substantial connections to the county. Dkt. 13 at 6-8. It should be irrelevant that Meza has a prior misdemeanor conviction and currently-pending misdemeanor charges. *See* Dkt. 24 at 6 (arguing that Meza's circumstances are different than those contemplated by *Heller*). These circumstances do not change the fact that he and his family have built a life in Milwaukee.

Consistent with *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (en banc) and *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010), this Court must

apply a heightened form of scrutiny. The government acknowledges that under an intermediate scrutiny standard, it bears the burden of establishing that § 922(g)(5) is substantially related to an important governmental objective. Dkt. 23 at 10; *see also Skoien,* 614 F.3d at 641. But then it argues that its burden should be reduced, with greater deference to Congress, because § 922(g)(5) relates to immigration. Dkt. 23 at 11. The cases cited by the government do not extend this deference in the context of a constitutional challenge to a criminal statute, though. Dkt. 23 at 11. It remains Meza's position that § 922(g)(5) should be analyzed in the same manner as other § 922(g) subsections. Dkt. 13 at 9-12.

Finally, the government has neither identified an important governmental objective behind § 922(g)(5), nor established that the statute furthers that goal. The government argues that § 922(g)(5) would survive intermediate scrutiny, but the only evidence it offers in support relates to the percentage of federal offenses committed by non-citizens, and the types of offenses. Dkt. 23 at 14. Again, it is the government's burden to establish that the statute is substantially related to an important governmental objective. It is not Meza's burden to disprove an objective or a connection. Because the government cannot meet its burden, this Court should find § 922(g)(5) unconstitutional.

### III. Meza's motion to suppress should be granted because he was subject to interrogation without *Miranda* warnings.

The parties agree that Meza was "in custody" for *Miranda* purposes at the time of the interview. Dkt. 23 at 13. This narrows the issue before the Court to the following: Did Agent Shearing's questions constitute interrogation?

The government argues that Shearing's questions were purely administrative but this ignores several important facts. First, and most importantly, Shearing initiated the interview based on a tip that Meza was present in the United States illegally. Tr. at 27. She testified that she went to the jail specifically to interview Meza at the request of Special Agent Dykema. Second, she knew that her questions to Meza addressed the elements of at least two criminal offenses. Tr. at 30. Third, Shearing indicated that she has the ability to refer cases to the United States Attorney's Office for prosecution. Tr. at 25, 29.

The case relied on by the government, *United States v. Lopez-Garcia,* 565 F.3d 1306 (11th Cir. 2009), shows the relevance of the facts set forth above. There were two interviews at issue in *Lopez-Garcia*. Lopez-Garcia was not read his *Miranda* rights until the second interview. The first interview was conducted as matter of standard procedure in the booking area of the jail after Lopez-Garcia's name appeared "on a list of individuals booked at the jail who had been born outside the United States." *Id.* at 1311. An ICE agent "regularly received" this list and determined who to interview after performing initial immigration status checks.

This agent's "purpose was not to initiate criminal charges against those present in the United States illegally," and in fact, he "lacked the authority to decide whether to bring criminal charges against any of the individuals whom he interviewed." *Id.* The agent knew prior to the interview was that Lopez-Garcia was born outside the United States, but had no reason to suspect that he was in the country illegally. *Id.* at 1311-1312. As the agent explained to Lopez-Garcia, the interview "was to determine whether [he] had immigration papers." *Id.* at 1311. Then the agent told him about deportation procedures and explained "that he could expedite his removal by signing a waiver of appearance." *Id.*

Further investigation after the first interview revealed that Garcia-Lopez had been previously removed and that no record of legal entry had been found. *Id.* Suspecting that Lopez-Garcia was in the country illegally and seeking to confirm that suspicion, the agent read him his *Miranda* warnings before beginning the second interview. *Id.* at 1312.

From its inception, Shearing's interview of Meza had the characteristics of an interrogation. It was initiated based on a tip from law enforcement that Meza was in the country "illegally." Tr. at 33. This was a specific tip as opposed to biographical data set forth on a routinely-prepared printout. During the interview and at the evidentiary hearing, Shearing framed the interview as an investigation into whether he was here "illegally." Tr. at 5, 22. As was the case with the second

interview in *Garcia-Lopez,* Shearing set out to confirm the suspicion that Meza was here illegally. Her questions were specifically targeted to establish when, where, and how he had entered the United States, and if he had ever been deported. Tr. at 29. There is no indication that Shearing ever walked Meza through the deportation procedures, or explained the administrative process. Finally, as previously stated, Shearing has the ability to refer cases for prosecution. *Id.* In this case though, Shearing relayed the information to Dykema who ultimately determined "that he was somebody that should be a candidate for federal prosecution." Tr. at 34.

These circumstances, especially when considered alongside those in *Garcia-Lopez,* are consistent with an interrogation. These were questions that "the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 300-301 (1980). All of Meza's statements stemming from the unwarned custodial interrogation must be suppressed.

## CONCLUSION

For the reasons stated in this brief and in his prior submissions, Meza's motions to dismiss and his motion to suppress should be granted.

Dated this 10th day of February, 2014.

Respectfully submitted,
MARIANO A. MEZA, Defendant

*/s/ Julie K. Linnen*
Julie K. Linnen

FEDERAL DEFENDER SERVICES
 OF WISCONSIN, INC.
222 West Washington Avenue, Suite 680
Madison, Wisconsin 53703
Tel: 608-260-9900
Fax: 608-260-9901
julie_linnen@fd.org