UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff*,

vs.                                                                                    Case No. 13-CR-192 (RTR)

MARIANO MEZA,

    *Defendant*.

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PARTIAL ATTORNEY-CONDUCTED VOIR DIRE

Mariano Meza is charged with possessing one bullet as an individual "illegally or unlawfully in the United States," in violation of 18 U.S.C. § 922(g)(5).

Mr. Meza requests that the Court permit each side in the case thirty minutes of attorney-conducted voir dire, not to substitute to Court-conducted voir dire, but to supplement it. Supplemental attorney-conducted voir dire will add an important dimension to the voir dire process. Specifically, it will more effectively advance the goal of obtaining an impartial jury through (1) the intelligent exercise of peremptory challenges by counsel and (2) full and informed consideration by the Court of any challenges for cause which may be made.

# ARGUMENT

A defendant has a constitutional right to an impartial jury. That right is protected through voir dire, *see Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981), and through a defendant's ability to make challenged, particularly peremptory challenges. Indeed, peremptory challenges are so crucial that a "system that prevents or embarrasses the full, unrestricted exercise of that right of challenge must be condemned." *Pointer v. United States*, 151 U.S. 396, 408 (1894).

Rule 24(a) of the Federal Rules of Criminal Procedure grants the district court broad discretion over voir dire. Included within that discretion is the right to control who conducts voir dire. The rule provides three options: (1) permitting counsel to conduct the entire voir dire examination; (2) permitting counsel to conduct some voir dire examination to supplement the court's; or (3) permitting no voir dire examination by counsel and conducting the entire voir dire examination itself. *See* Fed. R. Crim. P. 24(a).

However, the district court's discretion under Rule 24(a) is not without limit. It is "subject to the essential demands of fairness." *Aldridge v. United States*, 283 U.S. 308, 310 (1931). And supplemental attorney-conducted voir dire further advances the interests of fairness.

## A. ATTORNEY-CONDUCTED VOIR DIRE WILL PERMIT THE MOST INTELLIGENT EXERCISE OF PEREMPTORY CHALLENGES.

### 1. *The Importance Of Voir Dire To Peremptory Challenges.*

The dual purpose of voir dire is to provide enough information to exercise challenges for cause and enough information to exercise peremptory challenges. *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991). Challenges for cause are narrow in scope; they "permit rejection of jurors on narrowly specified, provable and legally cognizable bas[e]s of partiality." *Swain v. Alabama*, 380 U.S. 202, 220 (1965). Peremptory challenges, on the other hand, can be exercised "without a reason stated, without inquiry, and without being subject to the court's control." *Id.* at 220. *But see Batson v. Kentucky*, 476 U.S. 79 (1986) and its progeny, discussed *infra* pp. 10-12.

Because of the narrow scope of challenges for cause, the peremptory challenge is often the most useful and important tool for a litigant in picking an impartial jury. As noted by the Supreme Court in *Swain*, "voir dire in American trials tends to be extensive and probing, operating as a predicate for the exercise of peremptories . . . . The persistence of peremptories and their extensive use demonstrate the long and widely held belief that peremptory challenge is a necessary part of trial by jury." *Swain*, 380 U.S. at 218-219.

In order for a peremptory challenge to serve its purposes, it must be intelligently exercised. This requires that the parties obtain sufficient information from the potential jurors upon which to base their challenges. *Art Press, Ltd. v.*

*Western Printing Machinery Co.*, 791 F.2d 616, 618 (7th Cir. 1986). As one court has noted, "[p]eremptory challenges are worthless if trial counsel is not afforded an opportunity to gain the necessary information upon which to base such strikes." *United States v. Ledee*, 549 F.2d 990, 993 (5th Cir. 1977); *see also United States v. Corey*, 625 F.2d 704, 707 (5th Cir. 1980) ("[t]his court has previously stressed that voir dire examination not conducted by counsel has little meaning").

> 2. *The Contribution Of The Attorneys' In-Depth Knowledge Of The Case.*

One reason why a short period of attorney-conducted voir dire after the court's general voir dire will contribute to more complete information about the potential jurors is the attorneys' in-depth knowledge of the case. Important follow-up questions are more likely to occur to an advocate than a judge for several reasons, including the fact that a judge "does not have the advocate's awareness that soon he will be making peremptory challenges based on inferences from what prospective jurors have said" and the fact that "the judge does not know the case of either party in detail, so that he cannot realize when responses have opened areas for further inquiry." Barbara Allen Babcock, *Voir Dire: Preserving "Its Wonderful Power"*, 27 Stan. L. Rev. 545, 549 (1975). The Fifth Circuit has recognized:

> While Federal Rule of Criminal Procedure 24(a) gives wide discretion to the trial court, voir dire may have little meaning if it is not conducted at least in part by counsel. The "federal" practice of almost exclusive voir dire examination by the court does not take into account the fact that it is the parties, rather than the court, who have a full grasp of the

nuances and the strength and weaknesses of the case. . . . Experience indicates that in the majority of situations questioning by counsel would be more likely to fulfill this need [for information upon which to base the intelligent exercise of peremptory challenges] than an exclusive examination in general terms by the trial court.

*United States v. Ible,* 630 F.2d 389, 395 (5th Cir. 1980). *Accord United States v. Corey*, 625 F.2d at 707; *United States v. Ledee*, 549 F.2d at 993.

Voir dire conducted solely by the court thus reduces the effectiveness of peremptory challenges. In contrast to the court in most matters, attorneys have been working for months on the case. They are most likely to know the areas of questioning that must be explored further in order to uncover the prejudices that are most pertinent to the issues at trial. In addition, they act with an awareness that they will have to base peremptory challenges on the juror's answers.

> 3. *The Contribution Of The Attorneys' Different Relationship To Potential Jurors.*

A second reason why attorney-conducted voir dire – in addition to court voir dire – will elicit more complete information from potential jurors arises out of the attorneys' relationship to the jurors. Psychological studies suggest at least two differences between attorney-juror relationships and judge-juror relationships that enable attorneys to obtain more or different information from some potential jurors. *See* Davids Suggs and Bruce D. Sales, *Juror Self-Disclosure in the Voir Dire: A Social Science Analysis*, 56 Ind. L.J. 245, 253-58 (1981).

The first difference is the comparative status of judges and attorneys. Psychological studies suggest two things about the relationship between self-disclosure and the status of an interviewer: people (1) tend to disclose more to a person who is perceived to have higher "status" than they are, but (2) tend to disclose less if the difference in status is too great. *See* Suggs and Sales, *supra* at 253. In other words, a juror is likely to disclose the most information to a person who has somewhat greater status but not such greater status that the juror finds it impossible to identify with the other person. *Id.* at 253-54.

This suggests that supplemental attorney-conducted voir dire can add an important dimension to the voir dire process. Potential jurors come from widely varying social backgrounds, ranging from unemployed high school dropouts to established and well-educated professionals. They also vary widely in age, from elderly retirees to young adults who are still living with their parents. For some of these jurors, they may feel closer in "status" to the judge, and thus they will be most responsive to questions that come from the Court. But for others, particularly where the gulf in status between them and the Court is wider, attorneys may be more effective. Thus by having both attorneys and the court conduct voir dire, self-disclosure is most likely to be maximized.

A second difference in the juror-attorney relationship and the juror-judge relationship is also significant. As one set of commentators has noted, "the judge

has an extremely difficult role to fulfill, both intellectually and emotionally. He must be the arbiter of fine points of law, coordinate the activities of all parties to facilitate a just result and remain above interparty rivalries, all of which require that he remain aloof and emotionally detached." Suggs and Sales, *supra* p. 5, at 254. In contrast, attorneys are not so constrained. *See id.*

This is important to the question of jurors' self-disclosure. Psychological studies show that people are less willing to talk and reveal themselves to those who must remain at least somewhat detached. Suggs and Sales, *supra* p. 5, at 254-55. Permitting the attorneys to conduct some follow-up voir dire in addition to the court's voir dire will counter this problem in the voir dire process.

In sum, attorney-conducted voir dire in addition to the court's voir dire takes advantage of both the attorneys' greater knowledge of the underlying facts of the case and the differences between the attorney-juror relationship and the judge-juror relationship. Permitting attorney-conducted voir dire in addition to court voir dire will bring the best of both worlds to the process and maximize the information obtained.

4. *The Ability Of The Court To Control And Limit Voir Dire Abuse.*

There is a concern expressed by some commentators that attorneys may abuse the voir dire process, either by seeking to improperly ingratiate themselves with jurors or argue their theory of the case or by showing no concern for efficiency. *See*

Suggs and Sales, *supra* p. 5, at 250-51. But allowing attorney-conducted voir dire as a supplement to the court's voir dire will enable the Court to prevent such abuses.

First, if the Court begins by conducting its own voir dire, it can reasonably limit the voir dire it allows the attorneys to conduct. For example, after conducting the initial voir dire, the court can legitimately expect the attorneys not to repeat its questions or simply go on and on in an effort to charm the jurors. The Court can instead insist that the attorneys limit themselves to exploring new areas or asking follow-up questions o matters that are clearly relevant to the case.

In addition, this Court can place a specific time limit on attorney-conducted voir dire when it conducts the initial questioning. For example, this motion proposes a thirty-minute limit on attorney-conducted voir dire. Such a time is appropriately brief given that initial voir dire will have been conducted by the Court. Moreover, an attorney who is given this limited period is unlikely to waste time trying to smooth-talk the jury, and instead will be focused on a few limited, specific areas.

B. **ATTORNEY-CONDUCTED VOIR DIRE WILL AID THE PARTIES IN COMPLYING WITH THE REQUIREMENTS OF *BATSON V. KENTUCKY*.**

In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court held that the Equal Protection Clause prohibits challenging potential jurors "solely on account of their race or on the assumption that black jurors as a group will be unable to impartially to consider the State's case against a black defendant." *Id*. at 83; *See also*

*United States v. Carter*, 111 F.3d 509, 512 (7th Cir. 1997). Thus, peremptory challenges cannot be made in a way that discriminates against a cognizable racial group or other protected class. *See J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994) (expanding *Batson*'s protections to gender); *United States v. Harris*, 197 F.3d 870, 873 (7th Cir. 1999).[1]

Complete and effective voir dire is a basic premise underlying the rationale of *Batson* and its progeny in two respects. First, a complete and effective voir dire eliminates any need to rely on generalizations and stereotypes about people. As the Supreme Court recognized in *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994):

> If conducted properly, voir dire can inform litigants about potential jurors, making reliance upon stereotypical and pejorative notions about a particular gender or race both unnecessary and unwise. Voir dire provides a means of discovering actual or implied bias and a firmer basis upon which the parties may exercise their peremptory challenges intelligently.

*J.E.B.*, 511 U.S. 127, 143-44. Simply put, there is no reason for counsel to rely on stereotypes and generalizations about people if he is permitted to ask specific questions about them. *See id. at* 144, n.17 ( explaining that "the voir dire process aids litigants in their ability to articulate race-neutral explanations for their peremptory challenges").

---

[1]After *Batson*, a string of Supreme Court cases have extended its reach to parties other than the government. Criminal defendants and civil litigants are thus also barred from discriminating in the exercise of peremptory challenges. *See Georgia v. McCollum*, 505 U.S. 42 (1992); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991).

Whether a litigant is trying to prove a prima facie case of discrimination or trying to rebut one, an in-depth and extensive voir dire is essential. An attorney who must defend his peremptories should have sufficient information to provide a neutral explanation that will survive a *Batson* challenge. The court in *Burks v. Borg*, 27 F.3d 1424 (9th Cir. 1994), stated that "the stronger the objective evidence of discrimination, the more we will require by way of verifiable facts" to rebut the challenge. *Id.* at 1429-30. If an attorney is required to explain and point to "verifiable facts," he should be allowed to seek out those facts.

The *Batson* framework thus strongly supports allowing some attorney-conducted voir dire. If an attorney is going to be required to justify the inferences he draws and/or the impressions he gets from a juror's answers, he ought to be allowed to ask appropriate follow-up questions or ask questions in a way which will maximize the information he feels he needs to avoid relying on generalizations and stereotypes. An attorney conducting voir dire is able to do this more effectively than the Court because the attorney knows what factors he is concerned about and knows the underlying circumstances of the case and what characteristics in jurors are relevant to those circumstances.

C. **ATTORNEY-CONDUCTED VOIR DIRE WILL HELP AVOID REVERSIBLE ERROR ON APPEAL.**

The denial or impairment of the right to exercise peremptory challenges can result in reversal without a showing of prejudice. *Lewis v. United States*, 146 U.S. 370,

376 (1892). A court that insists on conducting all voir dire itself may create grounds for reversal. As the Ninth Circuit noted in *United States v. Baldwin*, 607 F.2d 1295 (9th Cir. 1979):

> The trial judge [may] insist on conducting a voir dire examination, but if he does so, he must exercise a sound judicial discretion in the acceptance or rejection of supplemental questions proposed by counsel. Discretion is not properly exercised if the questions are not reasonably sufficient to test the jury for bias or partiality.
> *Id.* at 1297.

The court went on to reverse the defendant's conviction for failure of the trial court to conduct a voir dire that created "reasonable assurances that prejudice would be discovered if present." *Id.* at 1298.

Other convictions have been reversed for insufficient voir dire as well. *See, e.g., United States v. Contreras-Castro*, 825 F.2d 185, 187 (9th Cir. 1987) (failure to ask whether jurors would give greater credence to law enforcement officer testimony); *United States v. Washington*, 819 F.2d 221 (9th Cir. 1987) (failure to ask whether jurors knew any of government's witnesses); *United States v. Ible*, 630 F.2d at 394-95 (failure to ask about jurors' moral or religious beliefs about alcohol); *United States v. Shavers*, 615 F.2d 266, 268 (5th Cir. 1980) (failure to ask jurors in assault case whether they had ever been victim of crime involving knife or gun); *United States v. Allsup*, 566 F.2d 68, 70 (9th Cir. 1977) (failure to ask jurors about views on insanity defense); *United States v. Segal*, 534 F.2d 578, 581 (3d Cir. 1976) (failure to ask jurors whether they had been employed by agency prosecuting case); *United States v. Dellinger*, 472

F.2d 340, 368-69 (7th Cir. 1972) (failure to ask jurors about attitudes toward Vietnam War, "youth culture", and relationship with law enforcement officers in case arising out of protest demonstration); *United States v. Poole*, 450 F.2d 1082, 1083-83 (3d Cir. 1971) (failure to ask jurors in bank robbery case whether they or any family member had been victim of robbery or other crime).

There will be no possibility of such a reversal if the Court permits counsel thirty minutes of voir dire each. After all, a defendant would hardly be in the position to complain about a failure of the court to ask a particular voir dire question when he himself failed to ask the question. Permitting counsel to conduct thirty minutes of voir dire transfers the burden of asking appropriate questions from the Court to counsel. Any risk of error due to insufficient voir dire will thereby be eliminated. *See, e.g., United States v. Rigsby*, 45 F.3d 120, 125 (6th Cir. 1995) (rejecting claim of error based on failure of court to ask particular voir dire question where defense attorneys were allowed to conduct additional voir dire after initial voir dire by court), *cert. denied*, 514 U.S. 1134 (1995).

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court allow counsel to conduct limited voir dire in the above-entitled case.

Dated at Milwaukee, Wisconsin, this 31st day of July, 2014.

Respectfully submitted,

/s/ Julie K. Linnen
Julie K. Linnen - Bar No. 1085029
FEDERAL DEFENDER SERVICES OF WI, INC.
517 East Wisconsin Avenue, Room 182
Milwaukee, Wisconsin 53202
Telephone: 414-221-9900
Fax: 414-221-9901
E-mail: julie_linnen@fd.org
Counsel for Mariano Meza